UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| PATRICIA W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-cv-00072-RLY-MPB |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 24). Plaintiff Patricia W.[1] seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 18; Docket No. 22; Docket No. 23). It is recommended that the District Judge **REMAND** the decision of the Commissioner of the Social Security Administration finding that Plaintiff Patricia is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

**I.    PROCEDURAL BACKGROUND**

On October 12, 2016, Patricia filed an application for DIB under Title II and SSI under Title XVI of the Social Security Act, alleging disability beginning April 10, 2012. (Docket No.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

16-5 at ECF pp. 2-7, 16-22). Her applications were denied initially and upon reconsideration. (Docket No. 16-3 at ECF pp. 11, 23). On September 11, 2018, Administrative Law Judge, Jason Yoder, conducted a hearing at which Patricia, her counsel, and an impartial vocational expert appeared and testified. (Docket No. 16-2 at ECF pp. 38-87). On December 20, 2018, the ALJ issued a decision finding that Patricia was not disabled. (Docket No. 16-2 at ECF pp. 16-32). On January 21, 2020, the Appeals Council denied Patricia's request for review, thereby rendering the ALJ's decision the agency's final decision for purposes of judicial review. (Docket No. 16-2 at ECF pp. 2-5). On March 25, 2020, Patricia timely filed this civil action, asking the court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

Patricia contends a number of errors and that, within each error, the ALJ actually committed multiple errors in those subparts. She argues that the common theme through each of these errors is that the ALJ cherry-picked and evidence and failed to provide an accurate and logical bridge to support the conclusions and assertions. The four errors specifically include: (1) failure to order a consultative examiner; (2) failure, at Step three, to properly assess (a) the "Paragraph B" criteria and (b) medical equivalence; (3) an unsupported Residual Functional Capacity ("RFC") given (a) it does not accommodate each of Patricia's conditions, (b) an error in the assessment of medical opinions, and (c) an error in assessing Patricia's statements; and (4) an incomplete picture of Patricia's functional capacity to the vocational expert ("VE").

The Court will first describe the legal framework for analyzing disability claims and the Court's standard of review and then address Patricia's arguments.

## II. STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then her residual functional capacity will be assessed and used for

3

the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

### III. STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th

Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he has made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## IV. FACTUAL BACKGROUND

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Patricia was not disabled. (Docket No. 16-2 at ECF p. 31). At step one, the ALJ found that Patricia met the insured status requirement through September 30, 2013 and had not engaged in substantial gainful activity[2] since April 10, 2012, the alleged onset date. (Docket No. 16-2 at ECF p. 18). At step two, the ALJ found that Patricia had the following "severe impairments: lumbar spine degenerative disc disease, obesity, major depressive disorder, generalized anxiety disorder, hypothyroidism, mild cervical and thoracic spine degenerative disc disease, and asthma. (Docket No. 16-2 at ECF pp. 18-19). At step three, the ALJ found that Patricia did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 16-2 at ECF p. 19-21). Of relevance to this Court's review, the ALJ's step three determination indicated that Listing 1.04 (disorders of the spine) and Listing 3.03 (asthma) was not met. As to the "paragraph B" criteria, Patricia had moderate limitations in two areas: interacting with others and concentrating, persisting or maintaining pace and mild limitations in two areas: understanding, remembering, or applying information and adapting or managing oneself. (Docket No. 16-2 at ECF pp. 20-21). After step three but before step four, the ALJ concluded:

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

5

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently, sit for at least 6 of 8 hours, and stand and/or walk for about 6 out of 8 hours. She can occasionally use the bilateral lower extremities for pushing and pulling. Occasional climbing ramps and stairs but never climb ladders, ropes, scaffolding. Occasional balance, stoop, kneel, crouch and crawl. She should avoid concentrated exposure to dangerous workplace hazards such as exposed moving machinery and unprotected heights, humidity, temperature extremes such as heat and cold, vibration, and fumes, dusts, odors, gasses, and areas poor ventilation. She can understand and remember simple instructions and carry out simple, routine and rote tasks that require little independent judgment or decision-making. She can have occasional public interaction.

(Docket No. 16-2 at ECF pp. 21-22). At step four, the ALJ found that Patricia was unable to perform her past relevant work. (Docket No. 16-2 at ECF p. 30). At step five, considering Patricia's age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Patricia can perform. (Docket No. 16-2 at ECF p. 30).

## V. DISCUSSION

As described at the outset, Patricia makes numerous assertions of error. It is not necessary to reach all of them because it finds that some of them are well-taken and, on their own, require reversal and remand.

1. **The RFC is not supported where there was not a logical bridge between the evidence and the ALJ's conclusion that portions of the Consultative Examiner's opinion regarding functional limitations was entitled to only little weight.**

Patricia raises three arguments to support her conclusion that the ALJ's RFC is not supported and lacks an accurate and logical bridge, mainly that the ALJ did not give good reasons for rejecting a portion for Dr. Umali's opinion that Patricia would need extra supervision

6

and time to complete her work. Patricia argues that this rejection was based on the ALJ's patently wrong assessment of her subjective statements, which amounted into the ALJ overestimating her activities of daily living ("ADLs"). These errors, she argues, culminated in an overstated RFC that did not adequately account for her moderate limitations in concentration, persistence or pace (even if we assume an assignment of "moderate" is appropriate as Patricia has also argued that the ALJ did not properly assess her paragraph B criteria earlier in the opinion).

The Commissioner responds that the ALJ reasonably rejected Dr. Umali's opinion by observing that Patricia was "very functional" and "regularly denied problems with remembering, making decisions, and doing errands." (Docket No. 22 at ECF p. 20, citing Docket No. 16-2 at ECF p. 29). The Commissioner further argues that the ALJ also assessed the opinions of reviewing psychologist Dr. Horton and reviewing psychiatrist Dr. Shipley, which also rejected Dr. Umali's supervision and time limitations. (Docket No. 22 at ECF p. 22, citing Docket No. 16-3 at ECF pp. 93, 105). Furthermore, the Commissioner argues that the ALJ sufficiently articulated his subjective symptom evaluation and, thus, the ALJ's reliance on that evaluation was good reason to reject Dr. Umali's opinion regarding extra supervision and time to complete her work.

The RFC is a determination of *the most* a claimant can do. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is based upon consideration of "*all* the relevant evidence in the case record." *Id.* at *5 (emphasis in the original). The ALJ found that Patricia had moderate limitations in concentration, persistence, or pace and assigned an RFC that, in relevant part, limited her to "understand and remember simple instructions and carry out simple, routine and rote tasks that require little independent judgment or decision-making." (Docket No. 16-2 at ECF p. 22). The ALJ reasoned that these limitations, combined with "occasional public interaction"

7

considered Patricia's moderate limitations from her anxiety and depression. (Docket No. 16-2 at ECF p. 30). The ALJ continued that "[n]o objective evidence justifies a conclusion that the claimant would be unable to persist at this level of activity." (*Id.*).

       This RFC (and the corresponding hypothetical to the vocational examiner) does not provide for any limitations to Patricia's ability to sustain concentration throughout the work day. The ALJ's limiting Patricia to "understand[ing] and carry[ing] out simple, routine and rote tasks that require little independent judgment or decision-making" is deficient because the ALJ did not account for any limitation to Patricia's work pace, despite finding a moderate limitation in the body of her decision. Moreover, the Seventh Circuit has long held that a limitation to the completion of "simple, routine tasks" refers to unskilled work, which indicates the amount of time required to learn how to perform a particular job, not how long a claimant can sustain concentration without requiring a break or wandering off task, does not account for pace. "[W]hether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining concentration, persistence, or pace—can perform such work. For this reason, we have repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015) (citations omitted).

       There are no "magic words" and that remand is unwarranted without citation to limitations omitted from the RFC that are supported by the record. *See e.g.*, *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (citation omitted) ("The law does not require the ALJs to use certain words, or to refrain from using others, to describe the pace at which a claimant is able to

8

work. We decline to provide a glossary of adjectives for use in RFC determinations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. Mar. 10, 2020) ("The ALJ need not use specific words 'concentration, persistence, and pace,' so long as she accounts for all the limitations she identifies. . . . [L]imiting Morrison to jobs involving 'simple and detailed, one-to-five step instructions only' adequately accounted for the only deficits in concentration, persistence, and pace that the ALJ found supported by the record."); *Saunders v. Saul*, 77 F. App'x 821, 825 (7th Cir. 2019) ("Saunders never once has told this court what other restrictions the ALJ should have included in her hypothetical, nor even at oral argument could he suggest a better way to capture the idea behind limitations in concentration, persistence, and pace and apply those problems to job requirements.").

But here, Patricia has cited to limitations that were omitted by the ALJ, namely (and among other things) the pace limitations noted by Dr. Umali, a consultative examiner who examined Patricia on December 2, 2016. (Docket No. 16-7 at ECF pp. 143-146). Dr. Umali opined that while Patricia could learn new information, "she may need extra supervision, practice and time due to issues with concentration and slowed processing." (*Id.* at ECF p. 146). With respect to Dr. Umali's opinion, the ALJ stated:

> Dr. Umali, the consultative psychologist, opined the claimant should be able to learn new information, but may need extra supervision, practice, and time due to issues with concentration and slowed processing (Exhibit 5F). Some weight if [sic] given to the fact she can learn information and has some issues with concentration, but there was no evidence to support the claimant would need extra supervision and time. As discussed in this decision, the claimant is very functional, regularly denied problems with remembering, making decisions, and doing errands. She used public transportation, shopped, managed finances, indicated she was very busy as a stay-at-home mom, cooked, and was primary caregiver for two children. The record supports she can do simple repetitive tasks. Accordingly, the supervision and time limitations are not supported and are given little weight.

9

(Docket No. 16-2 at ECF p. 29).

      Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. 404.1527(c)) (other citations omitted), the ALJ did not identify any other psychological evidence in the record that contradicted the opinions of the agency psychological examiner. The only reason the ALJ gave for discounting the opinion was his personal assessment that Patricia's daily activities suggested that she did not need additional supervision or time. First, Patricia's ability to do these activities does not necessarily mean that she would not need additional time to do them, thus I do not find this to be a good reason—by itself—to discount this portion of Dr. Umali's opinion. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons [ ], and is not held to a minimum standard of performance, as she would be by an employer.").

      However, even the daily activities the ALJ listed are limited by Patricia's ability to maintain pace. For example, Patricia's daughters (a freshman and a sophomore at the time of the hearing) and ex-fiancé help her significantly with the house chores and yardwork. On a typical school day, Patricia gets things done "slowly" around the house. (Docket No. 16-6 at ECF pp. 18-20). The ALJ recognized that Patricia testified she did chores for about 10 minutes at a time before she needed to rest. (Docket No. 16-2 at ECF p. 23). This is more critical because Dr. Umali's own examination shows support (i.e., supportability) for the greater restrictions that Dr. Umali opined. For example, at Dr. Umali's exam, Patricia's recent memory was slightly below average. (Docket No. 16-7 at ECF p. 145). She could not recall three objects 20 minutes later. (*Id.*). She was not successful at performing serial 7's. (*Id.*). "Her processing was slow." (*Id.*). Her

10

thought processes "appeared fairly normal, but there was a delay at times." (Docket No. 16-7 at ECF p. 143). These objective findings from Dr. Umali's own exam supported Dr. Umali's opinion. It is unnecessary to reach a conclusion whether the ALJ's subjective symptom analysis was "patently wrong," given there are other reasons remand is necessary.

The ALJ "must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). The ALJ failed to build that logical bridge in this case, leaving the reviewer unable to follow the reasoning behind the RFC, and raising concerns that the ALJ substituted his own medical judgment for that of the psychological examiner that he discussed. *See, e.g.*, *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003). Given remand is necessary on this issue and will require the ALJ to reassess his RFC, the remaining issues that Patricia argues were not incorporated into the RFC need not be discussed. Patricia can advocate for the limitations she believes are supported by the record on remand.

**2. Step three arguments**

Having found that remand is required to properly weigh the reports of the medical professionals, some comments are provided as to the remaining arguments that may be helpful on remand. At step three Patricia argues that three errors occurred, including: (1) in the "Paragraph B" criteria assessment, (2) in failing to obtain and medical opinion on equivalency, and (3) in failing to properly consider medical equivalence, particularly as to Listing 1.04 and 3.03.

At step three, the ALJ must consider whether a claimant's condition meets or equals a listing and must discuss each listing by name and offer more than a perfunctory analysis. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); *see also Berger v. Astrue*, 516 F.3d 539,

545 (7th Cir. 2008) (describing the "lax" standard that applies to an ALJ's analysis, which only requires minimal articulation). The claimant bears the burden of proving that her impairments satisfy or equal in severity the elements of a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Given the finding above that the ALJ did overstate or inappropriately rely on Patricia's activities of daily living, the ALJ may wish to revisit his discussion of the "Paragraph B" criteria on remand. While the step three "Paragraph B" assessment is not necessarily reliant on the ALJ's later RFC discussion, the two do consider much of the same evidence.

Patricia also argues that the ALJ should have requested the opinion of a medical expert on medical equivalence given the combination of impairments in this case. She concedes that it is typically at the ALJ's discretion on whether to obtain a medical expert opinion, but here there was no medical opinion evaluating medical equivalence on all of Patricia's impairments because the State Agency consultants did not assess asthma, degenerative disc disease, or thyroid condition under any Listing, nor her obesity under SSR 02-1p, 2002 WL 34686281. The Commissioner responds that SSR 17-2p does not require the adjudicator to obtain medical equivalence evidence prior to making a step three finding that a claimant's impairment(s) does not medically equal a listed impairment.

SSR 17-2p establishes that it is the ALJ that is responsible for making the determination of medical equivalence based on a preponderance of the evidence:

> At the hearings level or at the [Appeals Council or "AC"] level when the AC issues its own decision, the adjudicator is responsible for the finding of medical equivalence. The adjudicator must base his or her decision about whether the individual's impairment(s) medically equals a listing on the preponderance of the evidence in the record.

12

SSR 17-2p (S.S.A. Mar. 27, 2017), 2017 WL 3928306, at *3. The ruling goes on to state that the "record must contain one of the following" and then, of relevance, "[a] prior administrative medical finding from an MC or PC from the initial or reconsideration adjudication levels supporting the medical equivalence finding." *Id.* It continues:

> If an adjudicator at the hearings or AC level believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, we do not require the adjudicator to obtain [medical expert] evidence or medical support staff input prior to making a step 3 finding that the individual's impairment(s) does not medically equal a listed impairment.

*Id.* at *4.

      Patricia argues that because the State Agency consultants only considered Listings 12.04 and 12.06, they did not assess her asthma, degenerative disc disease, or thyroid condition under any Listing, nor her obesity under SSR 02-1p, 2002 WL 34686281. (Docket No. 18 at ECF p. 24). This is true. While the consultant's Disability Determination Explanations mention hypothyroidism, asthma, Hashimoto thyroidism, and degenerative disc disease with bulging disks, these appear under headings "alleged impairments" and "claimant alleging." (Docket No. 16-3 at ECF pp. 5, 9, 17, 21). They are not listed under the later "Medically Determinable Impairment" section. (Docket No. 16-3 at ECF p. 5, 17). While remand on this issue alone may not be necessary, the ALJ may consider whether an updated medical opinion on equivalency is necessary, particularly in light of post-consultant review medical imaging. (Docket No. 16-10 at ECF p. 7).

      **3. Consultative Examiner**

      Finally, Patricia argues that the ALJ should have ordered a consultative examination to assess her asthma because there was some evidence of physical findings related to Plaintiff's

13

asthma, but there were no pulmonary function tests, as would have been required to determine listing level severity at step three. The Commissioner responds that this was unnecessary because there was no evidence in the record that Plaintiff met nor equaled Listing 3.03B.[3]

The ALJ is responsible for ensuring the record is sufficiently complete for deciding disability. *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993) (ALJ has duty to develop a complete record). Reasonable minds can differ on "how much is enough," so the judiciary "accept[s] reasonable assessments by administrative officials about how much evidence is enough." *Id.* at 457. In *Poyck v. Astrue*, 414 Fed. Appx. 859, 861-62 (7th Cir. 2011) the Seventh Circuit described several circumstances that render the record incomplete and warrant a consultative examination: when the evidence is ambiguous, when specialized medical evidence is required but missing from the record, or when a claimant's medical condition has changed but

---

[3] Listing 3.03 states:

3.03 *Asthma* (see 3.00I), with both A and B:

> A. $FEV_1$ (see 3.00E1) less than or equal to the value in Table VI-A or V1-B for your age, gender, and height without shoes (see 3.00E3a) measured within the same 12-month period as the hospitalizations in 3.03B.
>
> AND
>
> B. Exacerbations or complications requiring three hospitalizations with a 12-month period and at least 30 days apart (the 12-month period must occur with the period we are considering in connection with your application or continuing disability review). Each hospitalization must last at least 48 hours, including hours in a hospital emergency department immediately before the hospitalization. Consider under a disability for 1 year from the discharge date of the last hospitalization; after that, evaluate the residual impairment(s) under 3.03 or another appropriate listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.03 ($FEV_1$ tables omitted).

14

the record lacks a recent medical evaluation necessary to understand the severity of the condition.

The ALJ found that Listing 3.03 was not met "because there is no evidence of an FEV1 less than or equal to the value for the claimant's height, age, and gender as specified in the listing *and* the requirement of exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart." (Docket No. 16-2 at ECF p. 19) (emphasis added). Indeed, the hospitalizations in the medical record would not have met Listing 3.03B, as explained by the Commissioner (Docket No. 22 at ECF p. 16), which accurately supports the ALJ's conclusion at Step three. Moreover, this case is distinguishable from *Shipley v. Astrue*, No. 1:10-cv-1311-DML-TWP, 2012 WL 845548, at *6 (S.D. Ind. Mar. 12, 2012), because in that case the claimant had repeatedly asked the ALJ for a psychological consultative examiner, which the ALJ declined without explanation, and then the ALJ ultimately concluded that the "records . . . in front of [him]" did not support finding a severe mental condition despite a lengthy medical history of mental issues. *Id.* Here, Patricia makes no argument that she requested a consultative examination to assess her asthma at the Commission level, nor could one be found in the record. Nevertheless, Patricia can readdress this issue on remand if she so chooses.

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **REMANDS** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 24th day of August, 2021.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.